IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| KRIS KINCAID d/b/a KINCAID ROOFING & REMODELING,<br><br>Plaintiff,<br><br>v.<br><br>ACCEPTANCE INDEMNITY INSURANCE COMPANY,<br><br>Defendant. | § § § § § § § § § § § § § No. 5:23-CV-282-H-BQ |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Kris Kincaid d/b/a Kincaid Roofing & Remodeling (Kincaid) filed a claim with his commercial insurance carrier, Defendant Acceptance Indemnity Insurance Company (Acceptance), concerning alleged hail and wind damage to Kincaid's property. Pl.'s Original Pet. 2, ECF No. 1-1. Acceptance and its agents inspected Kincaid's property and issued payment to Kincaid based on that estimate. *Id.* at 3. Believing that Acceptance underpaid the claim, Kincaid conducted his own investigation and provided Acceptance with an estimate and demand letter. *Id.* at 3–6. Acceptance did not respond to that demand letter, and Kincaid eventually filed suit against it, asserting claims for breach of contract and duty of good faith and fair dealing, as well as violations of the Texas Insurance Code and Deceptive Trade Practices Act. *Id.* at 5–12.

Acceptance now asks the Court to (1) compel Kincaid to proceed with the appraisal process in accordance with the insurance policy, and (2) abate the case pending the outcome of the

---

[1] The Honorable James Wesley Hendrix, United States District Judge, has referred this case to the undersigned for pretrial management, including "resolution" of "nondispositive matters." ECF No. 9. Because a motion to compel appraisal is not dispositive, the undersigned resolves the motion by order. *See Duncan v. GeoVera Specialty Ins. Co.*, No. 4:21-cv-00022, 2021 WL 2376609, at *1 n.1 (S.D. Tex. June 10, 2021).

appraisal. Def.'s Mot. 2–4, ECF No. 5.[2] Kincaid opposes Acceptance's requests, arguing that the dispute concerns extra-contractual claims and the policy's *coverage*—not the amount of loss—and an appraisal is therefore inappropriate. Pl.'s Resp. 3–4, ECF No. 7.[3] And even if he must obtain an appraisal, Kincaid asserts the Court should not abate the litigation. *Id.* at 3–6.

Because the Court concludes that Acceptance has properly invoked the appraisal process, it **GRANTS** Acceptance's Motion in this regard and **ORDERS** Kincaid to submit to the appraisal process. The Court, however, does not find that abatement is necessary, and **DENIES** Acceptance's Motion to Abate pending appraisal.

## I. Background

### A. Origin of the Dispute

Kincaid alleges that on May 13, 2020, his properties located at 5701 122nd Street and 2202 Clovis Road, in Lubbock, Texas (collectively, "Property") suffered wind and hail damage. Pl.'s Original Pet. 2. The Property was insured by Acceptance on the date of the purported damage. *Id.* Kincaid submitted a claim for the damage on May 24, 2022, and Acceptance subsequently inspected the Property. *Id.* at 3; Def.'s Mot. 1.

---

[2] Acceptance's motion contains two certificates of service, but one is essentially a certificate of conference. Def.'s Mot. 7. While Acceptance indicates the parties "conferred," it also confusingly states that Kincaid's counsel did not respond. *Id.* ("I conferred with opposing counsel . . . regarding this motion and he did not respond . . . ."). Such certification does not meet the requirements of Northern District of Texas Local Civil Rule 7.1(b), which requires the certificate in an opposed motion to "state that a conference was held, indicate the date of conference and the identities of the attorneys conferring, and explain why agreement could not be reached" or, if a conference was not held, to "explain why it was not possible to confer." "The contemplated conference must be 'meaningful'; mere notice that a party intends to file a motion does not constitute a meaningful conference." *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-cv-03200-N-BT, 2020 WL 13891225, at *1 (N.D. Tex. Aug. 20, 2020). The Court reminds counsel of her obligation to meaningfully confer with opposing counsel before filing a motion and abide by this Court's Local Rules. *See Brown v. Bridges*, No. 3:12-cv-4947-P, 2014 WL 2777373, at *2 (N.D. Tex. June 19, 2014) ("The requirement is part and parcel of the ethical rules governing attorneys and the court rules governing all parties . . . that require all parties to engage in meaningful discussions in an attempt to resolve matters without court intervention." (citation omitted)).

[3] Page citations to Kincaid's Response refer to the electronic page numbers assigned by the Court's electronic filing system.

On August 19, 2022, Acceptance issued a claim determination letter and payment to Kincaid based on its assessment of the damages, totaling $38,838.38. Def.'s Mot. 1; ECF No. 5-2, at 1.[4] This was based on Acceptance's determination that the roof of the Property needed to be repaired, but Kincaid asserts that Acceptance originally represented that the roofs would be replaced. Pl.'s Resp. 1–2. Kincaid notified Acceptance of his disagreement with the estimate and amount paid, and Acceptance sent another inspector to the Property, "which resulted in additional payment [on November 21, 2022,] but still not full roof replacement." *Id.* at 2; Def.'s Mot. 1; ECF No. 5-2, at 3–4.

On June 29, 2023, Kincaid sent Acceptance a demand letter, notifying Acceptance of his intent to sue in sixty days under the Texas Insurance Code and Deceptive Trade Practices Act (DTPA) if Acceptance did not issue full payment, and that his estimated damages were $496,984.30. Def.'s Mot. 1–2; Pl.'s Resp. 2; ECF No. 7-1. Acceptance failed to respond, and Kincaid, believing the parties had reached an impasse, filed suit on September 6, 2023. Pl.'s Original Pet. 1, 7; Pl.'s Resp. 2. Conversely, Acceptance asserts the parties reached an impasse on November 21, 2023, when Kincaid sent a new demand, this time for $558,139.89. Def.'s Mot. 2.

After confirming that Kincaid did not want to proceed with appraisal (*id.*),[5] Acceptance filed the instant motion.

---

[4] Because Acceptance and Kincaid did not attach separately paginated appendices as required by Local Rule 7.1(i), page citations refer to the electronic page number assigned by the Court's electronic filing system.

[5] Acceptance attests that "Plaintiff's counsel confirmed that Plaintiff was not in agreement with appraisal." Def.'s Mot. 2. But Acceptance's certificate of conference does not reflect as much (*see supra* note 2), nor does Acceptance include any evidence of this confirmation in its appendix.

3

B. **Parties' Arguments**

In Acceptance's view, appraisal is a contractual right available to both parties and a condition precedent to filing suit. *Id.* Acceptance asserts that such right can only be waived if it unreasonably delayed from the point of impasse in asserting that right, and the other party would suffer prejudice from the appraisal process. *Id.* Acceptance further avers that "[a]n impasse is reached when it becomes apparent to either party that they disagree as to the damages and [to] any further" negotiation. *Id.* at 3 (emphasis omitted). Acceptance also contends that the conduct of the party seeking appraisal is the determinative factor of unreasonable delay, not any measure of time. *Id.*

Acceptance contends the parties reached an impasse after Kincaid sent his updated demand on November 21, 2023, and thus, Acceptance did not unreasonably delay in invoking appraisal just a few days later. *Id.* at 2–3. Moreover, even if Acceptance's delay was unreasonable, Acceptance does not believe Kincaid can show prejudice. *Id.* at 3. According to Acceptance, because appraisal is available to both sides, Kincaid could have invoked the process to avoid prejudice, and his litigation costs do not constitute prejudice. *Id.* at 3–4. Thus, because Acceptance did not waive the right to appraisal and a "court has no discretion to deny an appraisal," Acceptance contends it is both entitled to appraisal and that abatement is appropriate as appraisal will resolve the underlying issue—i.e., the value of Kincaid's damages. *Id.* at 4 (citing *Patman v. State Farm Lloyds*, No. 3:15-CV-3940-BH, 2016 WL 11782434, at *5 (N.D. Tex. May 5, 2016)).

Kincaid understandably takes a different view. Pl.'s Resp. 3. He claims that this disagreement involves both contractual and extra-contractual claims and coverage issues, which will not be resolved through appraisal. *Id.* That is, to recover damages under his extra-contractual claims, Kincaid asserts he will need to show that Acceptance committed violations of the Texas

4

Insurance Code, DTPA, etc., before Acceptance invoked appraisal, and thus, discovery on these issues is necessary. *Id.* at 3–4. Moreover, Kincaid avers that the insurance policy gives Acceptance the "right to deny payment of the award after appraisal," which diminishes the likelihood that appraisal will resolve the underlying issue. *Id.* at 4–5. Because of this, Kincaid believes abatement will not promote judicial efficiency. *Id.* at 5.

Kincaid further contends that Acceptance has waived its right to an appraisal. *Id.* at 7. According to Kincaid, waiver of an appraisal clause occurs if: (1) there is an unreasonable delay in invoking appraisal after the parties have reached an impasse—i.e., the parties disagree on the amount of loss and refuse to negotiate further; and (2) that party's delay was prejudicial. *Id.* at 8–9. Kincaid claims Acceptance waived appraisal because it never responded to Kincaid's demand letter. *Id.* at 9. Kincaid claims this prejudiced him because he had to hire experts and attorneys and incur unnecessary fees. *Id.* In addition, if the Court compels appraisal, Kincaid avers he will be further prejudiced by incurring additional expenses. *Id.* at 9–10. In the event appraisal is required, however, Kincaid requests this Court place time limitations on each step of the process, to ensure it is efficient. *Id.* at 7.

In reply, Acceptance reiterates that abatement is warranted because payment of an appraisal award will resolve Kincaid's extra-contractual claims if the only "damages sought are lost policy benefits." Def.'s Reply 2, ECF No. 8. As such, abatement pending the appraisal will promote judicial efficiency. *Id.* Acceptance does not oppose Kincaid's request for the Court to impose time limits on appraisal; although, it does disagree with an "arbitrary [120-day] deadline." *Id.* at 2–3.

Acceptance also avers it did not waive appraisal because "[t]here was no intentional unreasonable delay in invoking appraisal." *Id.* at 4 (emphasis omitted). Rather, Acceptance

5

contends that it did not see the June 29 demand letter due to an administrative error, which does not constitute an intentional waiver. *Id.* at 4–5. In addition, Acceptance reiterates the parties did not reach an impasse until Kincaid filed suit, after which Acceptance "immediately reached out to [Kincaid's] counsel" and invoked appraisal shortly thereafter. *Id.* at 4–5. Finally, Acceptance asserts Kincaid has not shown prejudice from its delay in invoking appraisal because "incurring expenses pre-litigation does not establish prejudice for the purposes of proving waiver of appraisal." *Id.* at 5–6.

## II.     Appraisal Clauses and the Scope of Appraisals

"Appraisals are a 'means of resolving disputes about the amount of loss for a covered claim.'" *Salas Realty LLC v. Transp. Ins. Co.*, 425 F. Supp. 3d 751, 754 (N.D. Tex. 2019) (quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 889 (Tex. 2009)). Insurance policies often contain appraisal clauses, which "are generally enforceable, absent illegality or waiver." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011).

In Texas, appraisals are limited to determining the amount of loss, not liability, which is an issue reserved for the courts.[6] *Johnson*, 290 S.W.3d at 889–90. "The line between liability and damage questions" is not always clear. *Id.* at 890. But the Texas Supreme Court has provided guidance in this regard.

In *Johnson*, just as in the case at bar, the insured's property suffered hail damage. *Id.* at 887. The insurance company's inspector in *Johnson* "concluded that hail had damaged only the ridgeline of [the insured's] roof," while the insured's contractor "concluded the entire roof needed to be replaced." *Id.* In accordance with her policy, the insured demanded an appraisal, but the

---

[6] The parties apparently agree that Texas substantive law governs this action, which was originally filed in Texas state court. *See* Def.'s Mot. 2–4; Pl.'s Resp. 3–10; Pl.'s Original Pet. 1.

6

insurance company refused, claiming that the parties disagreed as to the cause of the damage—not the amount of loss—and an appraisal was therefore inappropriate. *Id.* at 888.

The Texas Supreme Court held that although determining the extent of hail damage necessarily required the appraiser to decide causation, appraisal was nevertheless warranted. *See id.* at 893, 895. In so holding, the court defined the scope of an appraisal, explaining that "when different causes are alleged for a single injury to property, causation is a liability question for the courts." *Id.* at 892. But "when different types of damage occur to different items of property," i.e., a divisible injury, "appraisers may have to decide the damage caused by each before the courts can decide liability." *Id.* Similarly, appraisers may distinguish between "loss due to a covered event" and that "from a property's pre-existing condition." *Id.* That is, "appraisers can decide the cost to repair each [damaged item] without deciding who must pay for it." *Id.* at 894.

In the event of divisible damage, for example, appraisers can assess causation when evaluating a property that has sustained covered damages but also has pre-existing wear and tear (i.e., damage not covered by most insurance policies). *Id.* at 892–93. The Texas Supreme Court reasoned that if appraisers could not "allocate damages between covered and excluded perils," appraisal clauses would be "largely inoperative." *Id.*

Important to this case, the Texas Supreme Court also observed that the appraisal had not yet occurred. *Id.* at 894. The court explained that "unless the 'amount of loss' will never be needed (a difficult prediction when litigation has yet to begin), appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895. This is because a court can always review an appraisal and remedy any flaws should the appraisal exceed the scope of the appraiser's authority. *Id.*

### III. Discussion

#### A. Appraisal is Appropriate

Kincaid apparently does not dispute that the policy supplies the parties with a right to demand appraisal. *See* Pl.'s Resp. 3–9 (arguing only that appraisal will not resolve all issues and that Acceptance waived its right to an appraisal). Thus, the Court considers only whether compelling Kincaid to participate in the appraisal process is appropriate. *See Johnson*, 290 S.W.3d at 895; *see also* Def.'s Mot. 2 ("Given the disparity between [Kincaid]'s demand and the payments made by [Acceptance,] . . . [Acceptance] invoked the appraisal provision in the policy to determine the amount of the loss."); Pl.'s Resp. 8 (Acceptance "has . . . minimized the scope of repairs, minimized the cost of repairs, and asserted their expert determined the roof was repairable."). The Court concludes this case does involve an amount-of-loss dispute and appraisal is therefore required.

Acceptance determined that the Property sustained damage due to the May 13, 2020 storm. ECF No. 5-2, at 1. It is not clear exactly what damage Acceptance found or the basis for the payment amount because Acceptance's pleadings and exhibits provide no explanation. *See id.* at 1–2; Def.'s Mot. 1–2. Kincaid's own investigation, however, purportedly revealed more severe damage to the Property's "metal roof, the roof membrane, [and] the hooded exhaust," as well as the presence of moisture "within the roof components—all caused by the storm . . . on the date of loss." ECF No. 7-1, at 6. Kincaid also contends that Acceptance originally represented that the roof would be replaced, but then decided to only cover the cost of repair. Pl.'s Resp. 1. The amount of loss is therefore at least partially in dispute because Acceptance acknowledges that the Property's roof was damaged by the storm—it merely disagrees as to the extent of damage. *See, e.g., Mattox v. Safeco Ins. Co. of Ind.*, No. 1:16-CV-1037-LY, 2016 WL 10519944, at *3 (W.D.

Tex. Nov. 28, 2016) (expressing doubt as to whether "a disagreement over causation truly exist[ed], given the fact that [insurer] . . . stated that it believe[d] at least some of the damage in question was caused by hail").

Nevertheless, Kincaid does not believe this is "a dispute about the amount of loss." Pl.'s Resp. 7. In *Johnson*, however, the Texas Supreme Court expressly held that an appraiser may allocate damage between a covered peril and those that are not, such as wear and tear. 290 S.W.3d at 892–93 (citing *Gulf Ins. Co. of Dall. v. Pappas*, 73 S.W.2d 145, 146–47 (Tex. Civ. App.—San Antonio 1934, writ ref'd)). The fact that an appraiser may have to differentiate between damage caused by hail and wear-and-tear or improper installation is not a reason for refusing to compel the appraisal. *See id.* at 895; *TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 473, 475 (5th Cir. 2013) (explaining that "[t]o the extent . . . appraisers merely distinguish[] damage caused by pre-existing conditions from damage caused by [a] storm, they . . . act[] within their authority," and upholding an appraisal attributing roof damage "to improper installation" and damage to a skylight "to rocks thrown from below"). That is, Kincaid "cannot avoid appraisal at this point merely because there might be a causation question that exceeds the scope of appraisal." *Johnson*, 290 S.W.3d at 893. Should the appraisal be flawed in some way, e.g., by determining causation, the Court can remedy that later. *Id.* at 895.

Ultimately, "someone must determine the amount of loss." *Id.* (internal quotation marks omitted). Where, as here, an appraisal has not yet occurred, the Court concludes that it should "go forward without preemptive intervention," as provided by the express terms of the policy. *Id.*; *see, e.g., TMM Invs.*, 730 F.3d at 475 (finding persuasive "the closeness of the facts in *Johnson* to those at bar—both involved roofs damaged in part by hailstorms," and reasoning that such a fact "militate[d] in favor of arriving at a holding similar to the one arrived at by the *Johnson* court");

*Duncan*, 2021 WL 2376609, at *3 ("In accordance with the express contractual language of the homeowners policy at issue, an appraisal shall take place to determine the amount of loss."); *Tri Invs., Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-116, 2019 WL 13114312, at *3–4 (S.D. Tex. July 15, 2019) (granting insurer's motion to compel appraisal, where dispute involved both coverage and amount-of-loss and "nothing in the record establishe[d] that the amount of loss was unequivocally established"); *Abbey on Preston H.O.A. v. Admiral Ins. Co.*, No. 3:13-CV-0102-N, 2013 WL 12143827, at *1 (N.D. Tex. May 30, 2013) (compelling appraisal that insurer demanded during Rule 26(f) conference, where although insured argued the parties disagreed "only whether [insurer] covered the loss or not," court found there was "still a disagreement as to 'the amount of loss,' implicating the appraisal provision"). The parties may then litigate causation issues, if necessary. *See Johnson*, 290 S.W.3d at 892, 894; *In re S. Ins. Co.*, No. 09–11–00022–CV, 2011 WL 846205, at *1 (Tex. App.—Beaumont Mar. 10, 2011, no pet.) ("[F]ollowing the Supreme Court's decision in *Johnson*, we conclude that under the circumstances the appraisal should be determined as an initial matter and the parties may then litigate causation questions.").

### B. Acceptance has not Waived its Right to Appraisal

To establish waiver of the right to appraisal, a party must demonstrate that: (1) the parties have reached an impasse; (2) after reaching an impasse, one party did not invoke appraisal within a reasonable time; and (3) the other party will suffer prejudice as a result of the delay. *Universal Underwriters*, 345 S.W.3d at 407–12 (setting out elements of waiver); *see JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th Cir. 2009) (per curiam) (describing acts of waiver as "those that are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him" (internal

quotation marks and citation omitted)). "'Waiver is an affirmative defense,' and the party alleging waiver 'bears the burden of proof.'" *Martinez v. Nationwide Gen. Ins. Co.*, No. 3:19-CV-01541-X, 2020 WL 3606399, at *2 (N.D. Tex. July 2, 2020) (quoting *JM Walker LLC*, 356 F. App'x at 748).

"Waiver is ordinarily a question of fact, but where the facts are admitted or clearly established, it becomes a question of law. The trial court may determine whether an appraisal has been waived as a matter of law at the preliminary stages of litigation." *Sanchez v. Prop. & Cas. Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *4 (S.D. Tex. Jan. 27, 2010) (internal quotation marks and citations omitted)).

The Court finds that Kincaid has not satisfied his burden of demonstrating waiver. The Texas Supreme Court defines an impasse as being "a mutual understanding that neither [party] will negotiate further" or when "*both* parties [become] . . . aware that further negotiations would be futile." *Universal Underwriters*, 345 S.W.3d at 409–10 (emphasis added). "If one party genuinely believes negotiations to be ongoing, it cannot have intended to relinquish its right to appraisal (unless it expressly waives it)." *Id.* at 409.

Kincaid maintains that the parties reached an impasse on "August 29, 2023 when [Acceptance] failed and/or refused to respond [within sixty days] to [Kincaid's] notices." Pl.'s Resp. 9. Acceptance, however, contends that due to an administrative error, the assigned adjuster did not "become aware of these notices until November 20, 2023." Def.'s Reply 5. Because Acceptance did not see the notices, it avers it "reasonably believed that [Kincaid] was no longer disputing the claim." *Id.* As such, Acceptance asserts the parties reached an impasse on November 21, 2023,[7] shortly after Acceptance filed its answer in state court and based on Kincaid's updated

---

[7] Acceptance also asserts that the impasse occurred when Kincaid filed suit—September 6, 2023. Def.'s Mot. 3; Def.'s Reply 4; Pl.'s Original Pet. 1.

11

demand showing a large "disparity" from what Acceptance had already paid. Def.'s Mot. 2; Def.'s Original Answer 1, ECF No. 1-1. Acceptance, in turn, invoked its right to appraisal shortly thereafter, i.e., on November 27, 2023. Def.'s Mot. 2.

Kincaid has failed to show that Acceptance did not make its appraisal demand within a reasonable time. The parties agree—although, they assert it occurred at different points—that they reached an impasse. *Id.*; Pl.'s Resp. 9. Kincaid generally alleges that Acceptance "failed to respond or refused to respond to [Kincaid's] notice and never notified [Kincaid] of the right or ability to invoke appraisal." Pl.'s Resp. 9. Assuming, for the sake of analysis, that the parties reached impasse on Kincaid's earliest claimed date—August 29, 2023, when Acceptance failed to respond to Kincaid's demand letter within sixty days—Acceptance nevertheless made written demand within approximately three months. ECF No. 5-4 (Acceptance's letter invoking appraisal, dated Nov. 27, 2023); *see Universal Underwriters*, 345 S.W.3d at 408 (providing that "reasonableness must be measured from the point of impasse"). During this three-month period, Acceptance indicated in its Answer (filed in state court) that invocation of the appraisal clause remained on the table. *See* Def.'s First Am. Answer 3, ECF No. 1-1 ("Defendant reserves the contractual right to invoke [the appraisal] clause, and that the property be appraised according to the . . . insurance policy if the parties reach an impasse."). In other words, Acceptance did not affirmatively waive its right to appraisal but instead expressly reserved it. In addition, the appraisal clause does not contain a specific time limit for demanding appraisal. ECF No. 5-1, at 25.

"[W]hile the time period may be instructive in interpreting the parties' intentions, it alone is not the standard by which courts determine the reasonableness of a delay." *Universal Underwriters*, 345 S.W.3d at 408. Based on the foregoing, the Court cannot conclude that Kincaid has carried his burden to establish unreasonable delay by Acceptance in demanding appraisal. *See,*

e.g., *Martinez*, 2020 WL 3606399, at *3 (determining insurer had not demonstrated insureds unreasonably delayed in demanding appraisal, where they "invoked appraisal within three to eleven months of" impasse, the policy did not contain a time limit for invocation, and the parties continued negotiations after insureds filed suit); *Adami v. Safeco Ins. Co. of Ind.*, No. 4:17-CV-574, 2018 WL 501093, at *5 (E.D. Tex. Jan. 22, 2018) (holding that "a five-month delay is not per se unreasonable," where policy included no time frame for invoking appraisal and insured presented no authority "suggest[ing] that a five-month delay [was] unreasonable, absent other conduct that would result in waiver"); *cf. Dwyer v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 288 (5th Cir. 2009) (explaining that when considering delay, courts should focus on the party's "knowledge and action—when [the party] knew that the appraisal clause could be invoked, whether it reacted timely to the knowledge"—and concluding that insurer's motion to compel appraisal filed five weeks after learning that insureds disputed only the amount of loss was not unreasonable delay); *Mattox*, 2016 WL 10519944, at *3 (concluding that insurer's appraisal demand made one month after reaching impasse was not unreasonable delay).

In addition, Acceptance asserts that it only failed to respond because an administrative error caused it to miss the notices. Def.'s Reply 5. This further erodes any support for concluding Acceptance engaged in intentional conduct that would give rise to a waiver. *See Rogers v. Nationwide Gen. Ins. Co.*, No. 4:18-CV-00213, 2018 WL 3840940, at *3–4 (E.D. Tex. Aug. 13, 2018) (finding insurer did not unreasonably delay invoking the appraisal clause six months after impasse and four months into litigation because its "intentional conduct inconsistent with its right to invoke the contractual right of appraisal [was] lacking"); *see also Universal Underwriters*, 345 S.W.3d at 407 ("Waiver requires . . . either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." (brackets and citation omitted)).

13

Finally, and most significantly, Kincaid has not shown that he will be prejudiced by the appraisal process. Kincaid asserts that he "has been prejudiced by having to seek experts and attorneys to pursue this claim, [and] incurring unnecessary expenses to pursue the open and obvious covered damages of which [Acceptance] was notified during the initial inspection." Pl.'s Resp. 9. According to Kincaid, he "will be further prejudiced if the Court orders appraisal as [he] will have to incur additional expenses for the appraiser and a portion of the umpire fees, . . . which [he] believes is unnecessary because" Acceptance initially represented it would replace the roof. *Id.* at 9–10. Kincaid also argues that Acceptance is using the appraisal process "as a shield to oppress" his rights. *Id.* at 10.

"[T]he prejudice required to find a waiver must be following impasse and prior to invocation of the appraisal process; the prejudice must be *caused* by the unreasonable delay." *Engdorf v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:18-CV-4280, 2019 WL 7905458, at *3 (S.D. Tex. Dec. 6, 2019) (emphasis added); *see Tri Invs.*, 2019 WL 13114312, at *6 ("Prejudice is the harm caused by the insurer's delay in invoking the appraisal *following an impasse*."). As previously discussed, Kincaid has failed to show that Acceptance unreasonably delayed in invoking the appraisal provision.

Kincaid avers that Acceptance failed to make him aware that appraisal was an option, resulting in an impasse, and later, prejudice. Pl.'s Resp. 8–9. However, "it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal." *Universal Underwriters*, 345 S.W.3d at 412. If Kincaid truly sensed the parties had reached impasse in August 2023—or even November 2022 when Acceptance allegedly underpaid his damages—he could have invoked the appraisal clause and avoided any alleged prejudice. *Id.* Thus, Kincaid has failed to demonstrate that he is prejudiced,

14

either legally or financially, by any purported delay in Acceptance's appraisal demand. *See, e.g.*, *Tri Invs.*, 2019 WL 13114312, at *6–7 (finding no prejudice where insured could have invoked appraisal clause and "fail[ed] to identify any expenses and fees that it incurred but would not have had to incur had appraisal been invoked" immediately upon impasse); *Mattox*, 2016 WL 10519944, at *3 (determining insureds had not shown prejudice, where they "had the opportunity to demand appraisal as soon as they disagreed with [insurer's] assessment of damages to their [rental] property" and they could pursue claim for lost rental income in spite of appraisal process); *SPJST Lodge #154 v. Century Sur. Co.*, No. 4:15-cv-710-O, 2015 WL 12699508, at *2 (N.D. Tex. Nov. 23, 2015) (reasoning that insureds' failure to demand appraisal "militate[d] against a finding of prejudice"); *Vera v. Companion Prop. & Cas. Ins. Co.*, No. 5:15-CV-73, 2015 WL 12777394, at *3 (S.D. Tex. Aug. 27, 2015) (rejecting insured's prejudice argument, where insured did not invoke appraisal clause and insurer demanded appraisal before discovery commenced, thus minimizing expense to insured).

In sum, Kincaid has not demonstrated that Acceptance engaged in conduct evincing "intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right," such that the Court can conclude Acceptance waived its right to invoke appraisal. *Universal Underwriters*, 345 S.W.3d at 407; *see JM Walker LLC*, 356 F. App'x at 748 ("Waiver is the intentional relinquishment of a known right."). The Court therefore concludes that Kincaid must submit to the appraisal process in accordance with the insurance policy's terms.

**C. The Court, in its discretion, will not abate this action.**

Acceptance asks the Court to abate this action pending appraisal because appraisal is a condition precedent to filing a lawsuit and will resolve all issues in dispute. Def.'s Mot. 2. Kincaid

disputes this notion, arguing appraisal will not resolve all issues between the parties, including his "extra-contractual claims." Pl.'s Resp. 3.

In cases where the insurance policy contains a "no action" clause, courts can abate the litigation. *See Johnson v. Liberty Mut. Fire Ins. Co.*, No. 4:14-CV-604, 2015 WL 11170153, at *2 (E.D. Tex. Oct. 30, 2015) ("In the case of an insurer trying to enforce a condition precedent . . . a proper remedy is abatement—or a stay of the proceedings—rather than barring the claim." (alteration in original) (citation omitted)). On the other hand, "[f]ederal district courts sitting in diversity and applying Texas law have, in most cases, declined to abate litigation pending appraisal where questions of coverage remain," as in the case at bar. *Carter v. Underwriters at Lloyd's, London*, No. 7:17-cv-00127-O, 2018 WL 10483854, at *2 (N.D. Tex. July 27, 2018) (citing cases in support). While the policy in this case contains a "no action" clause ("[n]o one may bring a legal action against us under this [policy] . . . unless . . . [t]here has been full compliance with all of the terms of this" policy (ECF No. 5-1, at 31)), this Court ultimately retains discretion over the question of whether to abate the proceeding pending appraisal. *See, e.g., Carter*, 2018 WL 10483854, at *2–3 (denying insured's request to abate litigation pending completion of appraisal); *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex. 2002) ("While the trial court has no discretion to deny the appraisal, the court does have some discretion as to the timing of the appraisal.").

Initially, the Court observes that the fact Kincaid failed to demand appraisal prior to filing suit does not, standing alone, require abatement. *Abbey on Preston*, 2013 WL 12143827, at *1. Kincaid filed suit before Acceptance invoked the appraisal clause—a condition that requires satisfaction "only if one side requests it" and "does not apply to every coverage situation." *Id.*

That is, "the part of the policy that requires that 'all conditions be met' does not necessarily mean that the appraisal process need be completed for a policyholder to file suit." *Id.*

Moreover, Kincaid raises several extra-contractual claims that are not governed by the appraisal clause. *See* Pl.'s Original Pet. 7–12. And the parties dispute coverage in addition to the amount of loss. *See id.* While Acceptance maintains that the parties' dispute only involves the amount of loss, Kincaid's response and pre-suit notice to Acceptance suggest a coverage dispute also exists. *See* Pl.'s Resp. 1–2; ECF No. 7-1. For instance, Acceptance apparently concluded that the Property only needed roof repairs. ECF No. 7-1, at 6. Conversely, Kincaid's expert, Adam's RoofTech, determined that the roof should be replaced based on "damage to the metal roof, the roof membrane, the hooded exhausted, and . . . moisture present within the roof components." *Id.* Kincaid avers that only paying for roof repairs rather than replacement was a "change in coverage decision" (Pl.'s Resp. 2) and misrepresentation of "pertinent facts or policy provisions relating to the coverage." Pl.'s Original Pet. 11; *see also* Pl.'s Resp. 6 (asserting Acceptance misrepresented "coverage that was to be provided and fail[ed] to explain the coverage decision—none of which would be resolved by appraisal").

"Thus, the parties dispute [Acceptance's] liability no matter the result of the appraisal." *Abbey on Preston*, 2013 WL 12143827, at *1 (declining to abate case despite compelling appraisal). For these reasons, the Court **DENIES** Acceptance's Motion to Abate. *See, e.g., Devonshire Real Est. & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2013 WL 12124308, at *5 (N.D. Tex. Mar. 26, 2013) (denying insurer's motion to abate where the amount of loss was only "one issue in dispute between the parties" and "appraisal [would] not resolve the other issues").

### IV.   Conclusion

Kincaid must comply with the terms of the insurance policy with Acceptance. The Court therefore **GRANTS** Acceptance's Motion to Compel Appraisal and **ORDERS** Kincaid to submit to the appraisal process in accordance with the policy's terms. The parties should immediately commence appraisal and conduct the process in a timely fashion to prevent unnecessary delay. *See* ECF No. 19. The Court further **DENIES** Acceptance's Motion to Abate proceedings and expects the parties to continue to comply with the deadlines contained in the Court's Original Rule 16 Scheduling Order.[8]

**SO ORDERED.**

Dated: February 27, 2024.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

---

[8] The Court is not opposed to extending unexpired deadlines in the event the parties are able to demonstrate *good cause* for doing so. An inefficient or unreasonably delayed appraisal process, however, will not constitute good cause and may result in appropriate action being taken against any party causing or contributing to such delay.